PEOPLE OF THE STATE OF ILLINOIS EX REL., ETC.,

v.

THOMAS W. McFALL ET AL.

*Schools—Special School for Colored Children—Quo Warranto—Practice —Petition for Leave to File Information—Counter Affidavits—Evidence.*

Upon a petition, in the name of the Attorney General, for leave to file an information in the nature of a *quo warranto*, against the members and officers of the Board of Education of the City of Quincy, and also against said Board, to require them to show by what authority they maintained, as alleged, a special school in said city for colored children, and excluded them

from other schools, it is *held:* That leave to file the information was not a matter of right on showing a *prima facie* case, *ex parte;* that the action of the court in affording respondents, by means of a rule *nisi*, an opportunity to be heard by counter affidavits, if erroneous, worked no injustice; and that the evidence sustains the action of the court in refusing the leave asked.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Adams County; the Hon. WM. MARSH, Judge, presiding.

Messrs. GEORGE HUNT and J. N. SPRIGG, for appellant.

Leave to file an information in the nature of a *quo warranto* should be granted to the Attorney General, as of public right, upon the complaint of the latter, and *ex parte* showing. R. S., Ch. 112, Sec. 1; People v. Golden Rule, 114 Ill. 42; High, Ex. Rem., 2d Ed., Secs. 697, 699, 707; People v. North Chi. R. R., 88 Ill. 544–6.

Upon a charge of usurpation in *quo warranto* proceedings, the burden is on the defendant to show that no usurpation has been committed. High's Ex. Rem., Secs. 629, 696*b*, 747.

Separate schools maintained at public expense for pupils of African descent, the exclusion of such pupils from the public schools where they reside, or the discrimination in such schools against pupils of African descent, are each unlawful. Ill. Const. 1870, Art. VIII, Sec. 1; R. S. Ill., Ch. 122, Secs. 105–107 (1874); Laws of Illinois, (1885), p. 64, Secs. 1, 2; Chase v. Stevenson, 71 Ill. 383; The People ex rel. v. The Board of Education of the City of Quincy, 101 Ill. 308; The Board of Education v. Tinnon, 26 Kas. 1; S. C., 40 Am. Rep. 203; Clark v. The Board, 24 Iowa, 266; Smith v. The Directors, 40 Iowa, 518; Dore v. Independent School District, 41 Iowa, 689; Kane v. Com., 101 Pa. St. 490; People v. Board of Ed., 18 Mich. 400; School District v. Aldrich, 13 N. H. 139.

Public school officers have no power to exclude pupils of whatever color solely for the reason that there is no room in the school house for them. It is the duty of such officers to provide equal accommodations for all children eligible to attend

the public schools. Const. 1870, Art. VIII, Sec. 1; R. S., Ch. 122, Sec. 119 *et seq.;* Chase v. Stevenson, 71 Ill. 385.

Messrs. L. E. Emmons and Carter & Govert, for respondents.

Leave to file an information in the nature of *quo warranto* is in the sound discretion of the court or Judge to which the application is made. And it is proper practice to lay a rule *nisi* on the defendants to show cause why the leave to file the information should not be granted. People v. Moore, 73 Ill. 132; People v. Waite, 70 Ill. 25; The People ex rel. v. Callaghan, 83 Ill. 128; The People ex rel. v. North Chicago R. R. Co., 88 Ill. 543; Dillon on Mun. Corp., Sec. 72; Commonwealth v. Arrison, 15 Serg. & R. 133; People v. Sweeting, 2 Johns. 183; State v. Tehoe, 7 Rich. 246; State v. Tolan, 33 N. J. L. 195; State v. Centerville Bridge Co., 18 Ala. 678; State v. Frisbee, 28 Vt. 714.

Whether the application for leave is on behalf of the Attorney General or a private relator, the statute requires that the court, or the judge thereof in vacation, shall be satisfied that there is probable ground for the proceedings before leave to file the information is given. Sec. 1, Chap. 112, Quo Warranto, 2 Starr & C., p. 1872, as amended by the laws of 1881, p. 125.

Whatever the rule might be where the petition is presented to a Judge in vacation, it is not error, where the petition is presented in term time, to lay a rule *nisi* on the defendants before granting leave to file the information. At any rate the defendants would be entitled to notice of the application. State v. Burnett, 2 Ala. (N. S.) 140; State v. Bummersall, 24 N. J. L. (Zab.) 529; The People ex rel. v. Golden Rule, 114 Ill. 43.

Granting leave to file an information in the nature of a *quo warranto* being in the sound discretion of the court, the judgment of the court refusing such leave must stand unless such discretion has been abused.

Pleasants, J. On the 25th day of September, of the Sep-

tember term, A. D. 1886, there was filed in the Circuit Court for Adams County, a petition in the name of the Attorney General, verified by the oath of Samuel Jonson, J. W. Monroe, Garrett Douglass and David Jones, for leave to file an information in the nature of a *quo warranto* against the appellees, who are alleged to be members and officers, and all the members and officers of the Board of Education of the City of Quincy, and also against said Board, to require them to show by what authority they claimed to exercise, and did exercise, certain powers therein mentioned, and alleged to be without warrant of law and in derogation of the rights of colored citizens of said city.

It set forth that the city is divided into nine school districts, in each of which is a public school building ; that the Lincoln District is about a mile square, in which there reside about one thousand white and one hundred colored children of age entitling them to admission to the public school of said district; that it embraces more colored persons than any other locality of equal dimensions in said city; that it was laid out and established with its present bounds in February, 1882, and was so bounded for the purpose of including the largest number of colored children of school age that could be located in one district of like size within said city, and of establishing and maintaining that school as a school for colored children only, and with intent to evade the laws and decisions of the Supreme Court of the State in that behalf ; that ever since its establishment it has been and is now maintained for that purpose and no other; that only colored teachers have been and are provided for it, and that, with few exceptions, they have been and are greatly inferior in fitness to those provided for the other schools, and that the system of grade, discipline and instruction therein maintained has been and is lower than that maintained in said other schools; that white children of school age residing in said district have been and are, without lawful reason, sent to other public schools of said city outside of said district, being required for that purpose to travel unnecessarily and unreasonably long distances ; that about one hundred and fifty colored children of school age

reside in other school districts of said city, and that, though in a few cases a small portion of them are admitted into these respective district schools, they are denied the equal rights, privileges, advantages, education and teaching to which they are entitled by law, and which are provided for and accorded to the white pupils in such schools respectively, and that other colored children of school age, being a large proportion of those so residing in said other districts, are wholly and unlawfully excluded from the public schools of the districts respectively in which they reside and are eligible to admission; that by reason of the establishment and maintenance of said Lincoln School, as a school for colored children only, and sending large numbers of white children of said district to other schools, those schools nearest said Lincoln District are crowded to such an extent as to overtax their teachers and endanger the lives and health of their pupils by imperfect ventilation and impure air, while the seating capacity of the Lincoln School is only about one-half occupied.

The petition does not specify an instance in which any right of any person, white or colored, has been denied or disregarded by the respondents, or any or either of them, but the unlawful and wrongful acts and doings so generally stated, are therein charged against the corporation, the Board of Education of the City of Quincy, and respondents as members and officers thereof, as done continuously and persistently since February, 1882, and in determined defiance of the law, and especially of the express decision of the Supreme Court in January of that year in reference to this same Board of Education and Lincoln School. 101 Ill. 308.

If true, these charges would make a clear case for the information, and very nearly also, if not quite, for an attachment as for contempt.

As shown by the petition, the Board consists of one member elected from each of the six wards of the city, together with the Superintendent of the schools and the Mayor of the city, who are *ex officio* members. The course of conduct set out would imply a conspiracy expressly entered into by every member of this body, and to which most, if not all, the prin-

cipals and teachers of the nine districts, mostly ladies, must also have been parties. What motive, personal to any, could have influenced them to such action, is not made to appear. If it was race prejudice, which could hardly have actuated all, unless they were elected and appointed with special reference to it, it is strange that they did not exclude all colored children from the other schools. For, since according to the petition the Lincoln School, though attended by the colored children of that district, and by some, if not "a large proportion " of the remaining one hundred and fifty residing in others, was only about half full, there must have been left in that school room for all the colored children in the city who desired to attend a public school; and yet there were colored children in others besides the Lincoln School.

The petition is not verified by the Attorney General. Of the facts in relation to the action of respondents, being local, he could hardly have had any personal knowledge. Nevertheless, being verified by the oath of four persons, and affecting the rights of a whole class of citizens under a general law, he could not well refuse to charge them officially, leaving with the parties thus verifying them the responsibility for their establishment by proof. Who they are, and what their motives or means of knowledge, except as hereinafter stated, does not appear. But from the nature of the charges, the number and c'aracter of the persons implicated directly and indirectly, and the absence of evidence as to the parties undertaking to verify them, it is no, matter of surprise that the Circuit Judge, upon the supposition that under' the statute the leave asked was not of right, and that he still had some discretion as to its allowance, not satisfied from the petition thus verified that there was not some misunderstanding of the facts, or some unworthy motive for making the charges, declined to grant it upon this *ex parte* showing, and only laid a rule *nisi* against the respondents, returnable October 4th, to show cause why it should not be granted; to which exception was duly taken.

On October 2d, the time for showing such cause was extended to the 14th, when the parties appeared by their respect-

ive attorneys and the hearing under the rule was had. Appellants, with twelve days further time for preparation to support their application, again read their petition, verified as aforesaid and treated as an affidavit, and their proposed information, together with the fortifying affidavits of America Campbell, Mary Bynum, Lawrena Redding, Eliza Clay, Martha Scott, Caroline Berger and Simon Parish.

The first count of this information charges that respondents unlawfully provided schools and teachers for the Lincoln District, inferior in quality and fitness to those provided for the others; that they refused to admit colored children residing in other districts to the public schools thereof, respectively, but required them to attend the Lincoln School or none, for no other reason than their color; and, to keep alive and cultivate distinctions on account of race and color, unlawfully permitted and directed white and refused to permit colored children of that district, purely on account of their color, to attend any other than the school in that district.

The second count charges that they maintain the Lincoln School out of public funds, purely as a colored school, and employ only colored teachers therefor, and refuse, permit and require attendance of white and colored children as stated in the first count.

The third charges substantially the same facts as the first, with the further averment that all the unlawful acts and doings therein charged were and are done solely on account of the race of the children and with intent to collect the colored into one school and the white into other schools.

The fourth count charges the same facts in substance set forth in the first, but with the introductory averment that the defendants have unlawfully usurped and exercised the power of selecting, designating and setting apart one of said schools as a school at which all colored children of the city who attend the public schools shall attend, and proceeding to aver the unlawful acts charged as committed in usurpation of authority on account of color, and for the purpose of separating the colored from the white children in the public schools.

The fortifying affidavits mentioned, excepting that of Amer-

ica Campbell, show that the affiants respectively were col-
ored persons residing in the Washington District, and on the
6th and 7th days of September, being the first and second days
of the school term, and during which, according to the rules,
application for the admission of pupils are to be made, at-
tended at the school house in said district with one or more
children eligible to admission, and applied to the principal of
said school for the admission of said children thereto, but were
refused, and that since such refusal other pupils have been
admitted to seats in the school room from which they were so
excluded. Some of these children so excluded resided nearer
to the Washington than to the Lincoln School, and in several
of these affidavits it is further stated that like applications
were refused in former years.

That of Mrs. Campbell shows that she and two neighbors
named, residing in the Lincoln District, made application to
the principal in the presence of the Superintendent, for the
admission of their children to the school in Jackson District,
which was refused, and the applicants told that their children
must attend Lincoln School or stay away from school.

It further states that a like application by them had been
refused for several years last past, and that during all that
time and now, white children residing in Lincoln District and
farther than affiant from Jackson School, have been and are
admitted to said Jackson School. The reason for such appli-
cation was that the Jackson School was nearer to their resi-
dence than was the Lincoln, and that one of Mrs. Campbell's
children was of delicate constitution, by reason whereof it was
unable to walk to the Lincoln, but could attend the Jackson
School, if permitted.

The papers above mentioned constitute the entire showing
made for the leave asked. In opposition thereto were sub-
mitted:

1. The rules of the Board of Education, duly published,
and showing among other things that no pupil could be admit-
ted to a public school other than that in the district of his or
her residence without a special permit from the Superintend-
ent, applying to the case of the children of Mrs. Campbell

and her neighbors mentioned ; that the *criteria* of eligibility to admission were the same for all the public schools of the city, and that no distinction in respect to any right or privilege of the children is made on account of race or color, and that the Superintendent is required to "see that the rules and regulations of the Board are uniformly and faithfully observed and executed in all the departments of the schools."

2. The joint affidavit of respondents Demerree, Robbins, Bagby, Wells, Kingsbaker and Duker, stating that since August 7, 1886, affiants and respondent McFall, the Superintendent, have constituted the Board of Education of the City of Quincy, and that respondent Parkhurst is not nor ever has been a member thereof; that they disclaim all right or authority or purpose to do, and deny that they have done, or authorized or consented to any or either of the unlawful or wrongful acts or things alleged against them in the petition or proposed information, either as a Board or as members thereof; that while some white children of the Lincoln District have been permitted to attend school in others, the like permission has also been given to some colored children of that district—in all cases alike upon the request of their parents and in accordance with the general rules of the Board; that they have not, directly or indirectly, through the Superintendent or any principal or teacher, or otherwise, in any instance, required any pupil to attend school out of the district of his or her residence, nor forbidden the admission of any to the school within such district on account of race or color, but have positively and in good faith instructed all the officers of the Board and the principals in charge of the different public schools of the city, that the rules should be enforced and obeyed, and that all children, irrespective of their color, complying with them, might and should be admitted as pupils to the respective public schools within the district of their residence; and that they have not known of any children being excluded from any public school building, or the school taught therein, by reason of color, by any teacher or principal, since they became members of this Board. These denials, going specifically to each of the charges, are as clear, direct, absolute and emphatic as language can make them.

3. Another joint affidavit of respondents Demerree, Bagby, Wells, Kingsbaker and Duker, stating that affiants, with respondent McFall and Robert H. Bennerson, composed the Board from August, 1885, to August 7, 1886, and that the facts set forth in the preceding affidavit were equally true of that year.

4. Affidavits of the several principals of all district schools, of whom all but two are women, that it has been the direction of the respondents, and especially of Superintendent McFall, that they should admit to their respective schools all children of school age residing in their districts, irrespective of their color, and that within the last twelve months no such children have been refused admission to the school of their proper district on account of their color.

That of the principal of Washington School explains the refusal to admit the children of the several persons whose affidavits in support of this petition have been mentioned, excepting Mrs. Campbell, whose application was for admission to another (the Jackson) school. She states that the Washington building contains four rooms, accommodating five grades; one, in which she teaches, being assigned for the 4th and 5th, and one for each of the others; that these refusals were but temporary, and solely for the reason that the rooms assigned for the grades to which these children belonged, respectively, were full at the time of the applications; that soon afterward room was made, and the children of affiants Parish, Bynum and Clay were admitted, and are pupils in said school; that no application has since been made for the child of Mrs. Redding, but it will be admitted when room is found; that Mrs. Scott was offered a permit for Jackson, the nearest school, but declined it, saying she preferred to wait for room in Washington School; and that the Berger children are attending the Lincoln School; that it often happens that the room for one grade is full when that of another is not; that she has frequently refused admission to white children for the same reason, and that colored children were at the time of these applications, and have ever since been, pupils of the Washington School, seventeen at present.

The affidavit of Superintendent McFall fills eleven pages of the record, and is so pertinent throughout that it has been reduced to no less than six in the abstract.

It explicitly denies the statement of Mrs. Campbell that he refused her application or told her anything whatever, and avers that though he was at the school building at the time referred to and there saw two colored women in conversation with the principal, he did not then have any conversation with them, nor hear or learn one word that passed between them and said principal; so that he was never in any way applied to for a permit to these children to attend that school. It corroborates the other respondents and the principals as to instructions given to make no discrimination between children on account of race or color, and denies that any child is now, or for more than twelve months past has been, required to attend a school out of its proper district or refused admission to any within it on that account; and avers that he has given permits to colored as well as white children of Lincoln District to attend elsewhere. It shows that the course of study in the Lincoln School is identical with that pursued in the others of the same grades; that the grade of discipline and instruction is as high, and the accomplishment, ability and fitness of its principal and teachers fully equal to the average of the others; that the district as now bounded is not so large in area as some, nor appreciably larger than others; that while it was originally organized and equipped, in 1872, as a school for colored children only, to accommodate the large number of that class who during and after the civil war came from Missouri and other southern States and settled in that section of the city, it was promptly, upon the decision of the Supreme Court, in January, 1882, hereinbefore referred to, reorganized with reasonable and proper bounds, and has always since been, in good faith, conducted, like the other public schools of the city, without reference to distinctions of race or color of pupils; that the Jackson School, which is nearest, is not crowded nor is its ventilation bad, and that Washington School, the one next nearest, though at times crowded or full in some of the grades, has never suffered by reason of pupils admitted

from Lincoln District, there being now there, from all the city outside of that district, only three, of whom one is colored.

Another affidavit from the principal of the Lincoln School, states that he is thirty-two years of age, a graduate of the normal department of Wilberforce University at Xenia, Ohio, of the year 1879, and has taught continuously ever since; also showing the education and experience of the teachers now under him, and that one of them succeeded Mrs. Munroe, who was discharged by the Board and is the wife of J. W. Munroe, whose affidavit is filed in verification of the petition herein.

Caroline Berger and Martha Scott, two of the persons whose affidavits were filed in support of said petition, say they would not have made them if they had known the purpose for which they were obtained, confirm the statement of the principal of the Washington School in relation to her refusal to admit their children, and further say they have known white children to be so refused by her for the same reason.

They are entirely satisfied with the administration of the public school system in Quincy, and do not believe there is in it any discrimination on account of race or color.

This long statement of what appears from the evidence, is not made because deemed at all necessary to a proper discussion or fair understanding of any question of law considered by the court as arising upon the record. A large community is interested in the public school system of the City of Quincy. The value of this system depends largely upon the methods of its administration. Every system of free common schools, general or special, is, from causes that are inherent, sufficiently tender and liable to be hurt by mere suspicion. When question is seriously made touching the fairness and honesty of its administration, the community especially concerned has an interest to know, and those who are charged with maladministration a right to have made known, the actual facts in the case. We have therefore endeavored to state the proof made against and in favor of these respondents as fully, and yet as briefly, as a due regard to this interest and right, in our judgment, demands.

The charge against respondents is that they have established and are maintaining with public funds, a school in the City of Quincy, for colored children only. Divers acts and facts, such as the boundaries and area of the district and of those surrounding it, the color of teachers employed for it, the admission and exclusion of pupils to and from it and other schools, with reference to their color alone, are alleged as evidence of the charge. They fully admit and we hold it to be settled, that the establishment and maintenance of such a school would be an unlawful exercise of power by them, and that the evidentiary acts and facts alleged are equally unlawful and would be pertinent proof of that charge. But they deny both the ultimate and the evidentiary facts so alleged. In all the controversy so far, then, no question of law is involved. One is suggested by appellants upon the reason claimed by appellees for the admitted exclusion from the Washington School of certain colored children residing in that district and eligible to admission to said school, viz.: that the room was already full. It is said that they have no power to exclude for that reason, and the language of the Supreme Court in Chase v. Stevenson, 71 Ill. 385, that "if the school house was too small it would have been eminently proper for the directors to have enlarged the building," is cited, and also the present law of compulsory attendance (R. S., Chap. 122, Secs. 119, *et. seq.*). But the incapacity of the room could not be known, nor consequently the necessity or duty of enlargement, until it was full, and further applications for admission were made. The rule contended for would be hard upon the directors, for if they have no power to exclude temporarily for want of room, it is still further beyond their power to admit presently in such a case. Nothing short of a miracle could do it; and the idea of the Supreme Court has been misunderstood.

We think the only question of law involved lies back of these of fact, and is whether, under the present statute, the court was bound by the showing of a *prima facie* case, *ex parte*, to grant the leave asked, without laying a rule *nisi*.

Such a rule was according to the usual course under the former statute. It is clear that under the one now in force,

it is not obligatory. The People ex rel. v. The Golden Rule, 114 Ill. 42. But whether the court might not, in its discretion, in order to be satisfied upon the question of probable cause, afford to the respondents, by means of such a rule, an opportunity to be heard by counter affidavits, has not been directly decided. It is evident, however, that under the present as under the former statute, the court has some discretion; that the filing by the Attorney General of an information in the nature of a *quo warranto* is not a matter of right; and that it is still an extraordinary remedy. If, therefore, under such a rule laid, a state of facts is developed which shows a strong improbability of cause for granting the leave, this court would not feel called upon to investigate, and be the first to commit itself upon this question of practice. Abundant time having been given to the petitioner to make his showing in support of his petition, and the presumption being that he knew, when he presented it, the sources and means of his proof to establish it, we can not see that any injustice has been done to the people whom he represents by the course that was pursued.

We are by no means satisfied—not merely from the denials by the respondents and other affiants of the allegations of the petition and proposed information, but from the independent facts apparently established—that there is any just occasion for this extraordinary proceeding. No one of the allegations in the petition appears to us to be sustained by anything like a preponderance of the evidence.

It is claimed that the affidavit of Superintendent McFall is evasive; and by way of example it is observed that while he states that neither the Jackson nor the Washington School was overcrowded by white children required or permitted to attend them from the Lincoln District, he does not state how it was with the schools in the other districts. But it is a fair presumption that children driven from the Lincoln District, if any there were, would seek refuge in the nearest harbors, which were the Jackson and Washington Schools, and further, he does positively state that the Washington School was the only one from which any children were excluded because of the want of room, and from that only for a time. In this

statement he is corroborated by those of the several principals of all these schools as to each respectively.  It is further observed that he omits to state under what circumstances, or to what extent, or when, how or why, he began to grant permits to white children of the Lincoln District to attend other schools.  But it is evident that this statement, unexplained, is against the respondents and therefore the omission of explanation is no evidence of an evasive disposition; and we think it further evident, from his statement and those of others, that they were given, as in cases in other districts, before this proceeding was threatened or anticipated, and without any intention on his part to exclude white children from the Lincoln School.

The only facts *prima facie* suspicious that we observe in the whole case are that only colored teachers were employed for, and only colored pupils actually attended the Lincoln School.

These facts, however, are not conclusive of any intention by the Board or its officers to establish and maintain it as a school for colored children only.  And that this condition was the product of natural causes, without such intention, we think is fairly shown.  That district was avowedly established for that purpose at first, under a supposed right to do it.  A larger proportion of the residents of that quarter of the city than of any other was made up of colored people.  Thus the condition and character of that school, as to color, was fixed before the rendition of the decision of the Supreme Court in January, 1882.  It would have been a wilfully unlawful discrimination, after that decision, to refuse certificates or employment to colored teachers.  The character of the population remaining unchanged, it was natural that colored teachers should apply for appointment to that school, and that white teachers should not.  It was also natural that colored children of the district should attend it; and, considering their number and the color of the teachers, it was also to be expected that white children would not, unless compelled.  For this prejudice or predilection on the part of each race, the Board of Education was not responsible.  If they neither coerced nor encouraged they were not responsible for its operation or result.  It is

not shown that they did, but it is shown that they did not.
They were not bound to district the city so as to divide the
colored population or compel the commingling of the races
or colors in all the schools, any more than they were bound
to so district it as to divide and compel the commingling of
different white nationalities. The districting actually made was
by a territorial division, as required by the case cited of School
District v. Aldrich, 13 N. H. 139, and that was enough, pro-
vided it was not so made for the purpose of establishing a
race school. There is no satisfactory evidence of the number
of white children in the district as established. The peti-
tion states it as "about" one thousand, and the verification is
in general terms, that the petition is true; but this is hardly
more than a statement under a *videlicet*, and there is no other
evidence as to the number. What proportion was Roman
Catholic, or for other reason non-attendants upon public
schools, is not stated. But if that be the number, then it is
clear, considering the number of colored children stated in the
petition as residing therein, that the district could not have
been so bounded from a purpose to establish an exclusively
colored school. According to a clear preponderance of the
evidence, it has been open for admission of white children as
freely as of colored, and not one who was eligible and desired
to attend has been excluded, or by the Board or any of its offi-
cers sent or required to attend elsewhere. The number per-
mitted to attend elsewhere, or some approximation to it, might
have been alleged and shown by the petitioner, but no such
allegation, nor any attempt at such showing, has been made.
It is admitted that some were so permitted, but this admission
affords no proof of a purpose or policy to prevent the attend-
ance of white children at that school, since like permission was
given to some colored children of the same district, and to
both white and colored in the other districts, but in all cases
upon the request of their parents and under rules of general
application. And if it appeared, as it does not, that a larger
proportion of such permits had been given to white children
of that district than of any other, upon such requests, and
without coercion or positive influence used by the Board of

Education to induce them, we should not regard that fact as evidence of any abuse or usurpation of power, for we are not prepared to hold that it was their duty to make special opposition to the inclination of white parents of that district to have their children taught in other schools, under existing circumstances.

Had all the facts shown by a clear preponderance of evidence, heard under the rule *nisi*, appeared by the petition, the Circuit Court, in our opinion, would have been justified under the statute in refusing the leave asked; and if it erred in affording the opportunity, by means of that rule, for the presentation of the facts as shown by the respondents, which we do not decide, it was an error that worked no injustice.

The order refusing the leave asked will therefore be affirmed.

*Order affirmed.*